UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CAESAR OSAKAN, individually, on behalf of all other similarly situated persons, and on behalf of the California Labor Workforce Development Agency and the State of California,<br><br>               Plaintiffs,<br><br>        vs.<br><br>APPLE AMERICAN GROUP; APPLE NORCAL, LLC, and DOES 1-20,<br><br>               Defendants. | Case No: C 08-4722 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND DENYING PLAINTIFF'S MOTION TO CONTINUE TRIAL**<br><br>Docket 54, 55 |

Plaintiff Caesar Osakan, a former employee of Applebee's restaurant, brings the instant wage and hour class action, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, et seq., and various state statutes, against the restaurant chain's owners and operators, Defendants Apple American Group ("Apple American") and Apple Norcal, LLC ("Apple Norcal"). Plaintiff alleges that he and other Applebee's assistant managers were misclassified as exempt employees, and deprived of meal and rest breaks and overtime pay. Trial in this action is scheduled to commence on July 12, 2010.

The parties are presently before the Court on (1) Plaintiff Caesar Osakan's Motion to Amend the First Amended Complaint (Docket 54) and (2) Plaintiff Caesar Osakan's Motion to Continue Trial and All Related Deadlines Identified in the Case Management Scheduling Order Issued on June 17, 2009 (Docket 55). Having read and considered the papers submitted, and being fully informed, the Court GRANTS IN PART and DENIES IN PART the motion for leave to amend, and DENIES the motion to continue. Pursuant to Federal Rule of Civil Procedure 78(b), the Court adjudicates the instant motions without a hearing.

I.    **BACKGROUND**

     A.    **FACTUAL AND PROCEDURAL HISTORY**

     Plaintiff Caesar Osakan worked as an assistant manager for Applebee's in San Rafael, California, from May 14, 2007 until his termination for alleged performance issues on October 17, 2007.  Griffen Decl. ¶ 3 (Docket 62-2).  Almost a year later on September 19, 2008, Plaintiff sent a letter to Defendants complaining that he had been discriminated against based on his race, age and national origin, and demanding payment of $4,388 plus his "last bonus pay."  Id. Ex. 1 at 1-2.  Plaintiff indicated that he had been advised by his attorney, Yosef Peretz, to file a lawsuit, but that his preference was to resolve the matter informally.  Id.  He closed his letter by indicating that if payment was not received within three weeks, he would have his attorney handle the matter for him.  Id.  Having received no response to his demand letter, Plaintiff, through counsel, filed a class action complaint in this Court against Defendants on October 14, 2008.  In his complaint, Plaintiff alleged that he and other assistant managers were misclassified as salaried exempt employees, and not paid overtime or provided with meal or rest breaks.  See Compl. ¶ 26 (Docket 1).

     On November 12, 2008, Plaintiff, acting on his own behalf, again contacted Defendants, apparently in response to their prior counter-offer to settle his claims for $1,000.  Griffin Decl. Ex. 2.  Plaintiff stated that he did not "like dealing with attorneys" and countered with a proposed settlement of $3,000 for a "full settlement."  Id.  On or about November 19, 2008, Defendants and Plaintiff entered into a written Settlement Agreement and Release ("Settlement Agreement") in which Plaintiff agreed to "release and any all common law and/or statutory claims he may have" in consideration for payment of $3,000.  Id. Ex. 4.  Despite the settlement, Plaintiff, through counsel, filed a First Amended Complaint against Defendants on December 23, 2008.  The amended complaint alleges nine claims for relief under the FLSA and California labor laws and regulations for, inter alia, failure to pay overtime wages, provide meal and rest periods, and waiting time violations.  Shortly thereafter, Defendants notified Plaintiff that in light of their Settlement Agreement, he could not pursue his lawsuit.  Peretz Decl. ¶ 7.

1    On June 17, 2009, the Court conducted a Case Management Conference at which it set

2  pretrial deadlines, including a discovery cut-off date of March 31, 2010, and a trial date of July

3  12, 2010.  Following the Case Management Conference, on July 2, 2009, Plaintiff served

4  extensive written discovery in Defendants.  Griffin Decl. ¶ 12.  A few days later, on July 7,

5  2009, Defendants notified Plaintiff of their position that his claims were barred by the

6  Settlement Agreement, and therefore, the discovery requests were overbroad.  Id. Exs. 10, 11.

7  For the remainder of the year, the parties continued to dispute whether the Settlement

8  Agreement precluded Plaintiff from pursuing his lawsuit and whether it circumscribed the

9  scope of discovery.

10    On January 25, 2010, over six months after serving his discovery requests, Plaintiff

11  filed a motion to compel, which was referred to Magistrate Judge Spero.  (Docket 42.)  On

12  February 1, 2010, Magistrate Judge Spero ordered the parties to meet and confer in his

13  courtroom on February 12, 2010.  (Docket 49.)  The parties complied, and were able to resolve

14  all outstanding discovery disputes.  (Docket 52.)  In accordance with their agreement,

15  Defendants provided Plaintiff with additional discovery, including the contact information for

16  class members, between March 4 and 6, 2010.  Griffen Decl. ¶ 26.  After receiving this

17  discovery, Plaintiff's counsel notified potential class members of the action, and thereafter was

18  retained by Jennifer Lankorst ("Lankorst"), Heather Payne ("Payne"), Adam Tucker

19  ("Tucker"), and Scott Benoit ("Benoit").  Pl.'s Mot. to Amend at 10.

20    **B.    MOTIONS PRESENTLY BEFORE THE COURT**

21    On March 19, 2010, less than two weeks prior to the discovery cut-off, Plaintiff filed

22  the two motions that are now before the Court.  *First*, Plaintiff moves for leave to amend to file

23  a Second Amended Complaint to:  (a) join four new class representatives, i.e., Lankorst, Payne,

24  Tucker and Benoit; (b) to limit the Class to California employees only; and (c) to add a new

25  allegation that "Defendants had and/or have a policy and practice of instructing their assistant

26  managers to 'adjust' their time cards to reflect that they took lunch breaks or did not work

27  overtime."  Pl.'s Mot. to Amend at 5.  *Second*, Plaintiff moves to continue the trial date and

28  related pretrial deadlines by ninety days "so that the current *ambiguity regarding the class*

1   *representatives* may be resolved prior to the dispositive motion deadline and for both parties to

2   conduct all necessary discovery that arises from any amendments to the operative complaint."

3   Pl.'s Mot. for Continue Trial at 4 (emphasis added).  Defendants do not object to Plaintiff's

4   request to limit the Class to California employees, but oppose the motions in all other respects.

5   As will be set forth below, both motions turn on whether Plaintiff has demonstrated "good

6   cause" for his requests within the meaning of Federal Rule of Civil Procedure 16(b)(4).  As

7   such, the Court discusses both motions together.

8   **II.   LEGAL STANDARD**

9           Rule 15(a)(2) provides that leave to amend a complaint should be "freely given when

10   justice so requires."  Generally, leave to amend is to be granted with "extreme liberality."

11   Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).  However, the

12   court may deny leave to amend "where the amendment of the complaint would cause the

13   opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or

14   creates undue delay."  Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994)

15   (citation and internal quotations omitted).  The court's discretion to deny leave "is particularly

16   broad where plaintiff has previously amended the complaint."  Ascon Props., Inc. v. Mobil Oil

17   Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

18           Where, as here, the motion to amend is presented after the Court has entered a pretrial

19   scheduling order, the liberal rules governing motions to amend under Rule 15(a) are

20   inapplicable.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000).  Instead,

21   a motion to amend is to be analyzed under Rule 16(b)(4), which requires the movant to

22   demonstrate "good cause" for allowing the amendment.  Id.  "Rule 16(b)'s 'good cause'

23   standard primarily considers the diligence of the party seeking the amendment."  Johnson v.

24   Mammoth Recreations, 975 F.2d 604, 609 (9th Cir. 1992).  "Although the existence or degree

25   of prejudice to the party opposing the modification might supply additional reasons to deny a

26   motion, the focus of the inquiry is upon the moving party's reasons for seeking modification….

27   *If that party was not diligent, the inquiry should end*."  Id. (emphasis added); Zivkovic v. S.

28   Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of motion to modify

1    pretrial schedule where plaintiff failed to "demonstrate diligence in complying with the dates

2    set by the district court"). If the plaintiff demonstrates good cause under Rule 16(b), he or she

3    must then establish that the proposed amendment is permissible under the factors germane to

4    Rule 15. <u>Johnson</u>, 975 F.2d at 609.

5    **III.   DISCUSSION**

6         **A.   DILIGENCE**

7         Plaintiff contends that he acted diligently, and claims that any delay in seeking leave to

8    amend is a result of Defendants' refusal to adequately respond to his discovery requests[1]. He

9    further contends that information regarding class members was not disclosed until March 4,

10   2010, and that as soon as he was able to identify additional class representatives, he filed the

11   instant motion. These contentions are unavailing. Plaintiff indicates that his reason for seeking

12   the joinder of four new plaintiffs is to avoid the potential determination that he is not a proper

13   plaintiff or class representative due to having previously waived his claims under the terms of

14   the Settlement Agreement. Pl.'s Mot. to Amend at 5. However, Plaintiff has known of this

15   potential standing issue since as early as July 7, 2009, when Defendants contacted Plaintiff to

16   object to the scope his then recently-served discovery requests. Griffin Decl. Ex. 11. Indeed,

17   Plaintiff acknowledges in his motion that "[t]hroughout the litigation of this action, Defendants

18   have contended that Plaintiff is not an adequate class representative due to the Settlement

19   Agreement …." <u>Id.</u> at 12. Given such awareness, Plaintiff should promptly have taken

20   appropriate steps to resolve the dispute and/or seek to join or substitute himself with an

21   appropriate class representative or representatives. Instead, Plaintiff persisted in claiming that

22   the Settlement Agreement is irrelevant and waited until the discovery cut-off and eve of trial to

23   join additional representatives in the event he is found to lack standing.

24

25        [1] Because Plaintiff filed his motions after the entry of a Rule 16 scheduling order and
     requests the modification thereof, the threshold issue is whether Plaintiff has established good

26   cause within the meaning of Rule 16(b)(4) for his requests. <u>See</u> <u>Johnson</u>, 975 F.2d at 608.
     With regard to Plaintiff's motion to amend, both parties discuss only the Rule 15 factors, and

27   fail to address the good cause requirement. Nevertheless, given the overlap between Plaintiff's
     motion to amend and motion to continue trial, the Court is able, upon review of the papers

28   submitted, to make the requisite good cause assessment.

1    Plaintiff argues that he could not have sought to join the new class representatives

2 sooner because of Defendants' alleged efforts "to evade responding to Plaintiff's discovery for

3 over six months."  Pl.'s Mot. to Amend at 4.[2]  The Court is unpersuaded.  The burden of

4 preparing this case for trial is on Plaintiff.   Thus, to the extent that Plaintiff believed that

5 Defendants were impeding his ability to prepare his case by failing to comply with their

6 discovery obligations, he should have promptly sought relief from the assigned discovery

7 magistrate.  Instead, Plaintiff delayed taking any action for over half a year after serving his

8 discovery requests.  Such conduct demonstrates his lack of diligence.  See Claytor v. Computer

9 Assocs. Int'l, Inc., 211 F.R.D. 665, 667 (D. Kan. 2003) (upholding magistrate's denial of

10 request to extend discovery cut-off date on the ground that "plaintiff should have sought

11 assistance from the court earlier than [the discovery cut-off] if he believed that defendant was

12 obstructing the discovery process or believed that, for whatever reason, he was not going to be

13 able to complete discovery consistent with the discovery deadline."); In re Sulfuric Acid

14 Antitrust Litig., 231 F.R.D. 331, 337 (N.D. Ill. 2005) (motion to compel filed at close of

15 discovery was untimely where "plaintiffs knew from the outset what [defendant]'s position

16 was, and they had the option to do something about it," but made a "conscious decision … not

17 to bring the matter to the court's attention."); see also Jackson, 902 F.2d at 1388 ("Relevant to

18 evaluating the delay issue is whether the moving party knew or should have known the facts

19 and theories raised by the amendment in the original pleading.").

20    Finally, Plaintiff attempts to attribute his delay in obtaining discovery to the parties'

21 purported agreements to stay discovery pending their attempts to settle the case.  Pl.'s Mot. to

22 Continue Trial at 4.  Other than an agreement to briefly stay *depositions only*, there is nothing

23 in the record to support Plaintiff's claim that the parties had entered into such an agreement.

24 Todd Decl. ¶ 4.  While Plaintiff's desire to pursue settlement while minimizing costs is

25 understandable, he nonetheless remained obligated to prepare his case in a diligent manner,

26

27    [2] Plaintiff indicates that he learned of Defendants' alleged practice of instructing
assistant managers to alter time cards from the proposed class representatives.  Pl.'s Mot. to
28 Amend at 13.

1   consistent with the pretrial schedule entered by the Court in June 2009, in the event that no

2   settlement was reached.  Plaintiff's conscious decision to pursue settlement at the expense of

3   preparing his case for trial does not demonstrate excusable neglect.

4   **B.   PREJUDICE**

5   Entirely aside from the foregoing, the Court finds that the prejudice to Defendants also

6   militates against granting Plaintiff's motions.  Prejudice is a significant consideration under

7   both Rule 16(b) and Rule 15(a).  See Coleman, 232 F.3d at 1295 (explaining that prejudice,

8   "although not required under Rule 16(b), supplies an additional reason for denying the

9   motion."); Eminence Capital, LLC, 316 F.3d at 1052 (noting that prejudice is a critical

10  consideration in determining whether the grant leave to amend under Rule 15).

11  Plaintiff contends that his proposed amendments "will not change not change the

12  underlying claims" and that, at most, only "minor additional discovery" will be necessary.

13  However, Plaintiff's proposed joinder of four new class representatives will unduly prejudice

14  Defendants, who have been preparing their defense based on the identity of the class

15  representative—Mr. Osakan—who is identified in the original complaint as well as the

16  amended complaint.  Allowing Plaintiffs to add new plaintiffs at this juncture would require the

17  Defendants to conduct new and/or additional discovery.  For instance, Defendants would need

18  to ascertain whether any of the four proposed plaintiffs are subject to unique defenses, which

19  would bear upon the typicality requirement of Rule 23.  See Hanon v. Dataproducts Corp., 976

20  F.2d 497, 508 (9th Cir. 1992).  The need to conduct additional discovery is considered

21  prejudicial.  See In re Milk Prods. Antitrust Litig.,195 F.3d 430, 438 (8th Cir. 1999) ("Granting

22  [a motion to add class plaintiffs] would have required reopening class discovery and further

23  delay, precisely the sort of prejudice that justifies denial of a motion to amend under Rule

24  15(a).").

25  Likewise, the inclusion of a new allegation that Defendants directed assistant managers

26  to alter their time cards cannot be dismissed as an inconsequential change, as Plaintiff suggests.

27  The amended complaint is based on claims by assistant managers who are classified as exempt

28  and thus paid on a salaried basis.  E.g., First Am. Compl. ¶ 31.  The proposed new allegation

1  states that "Defendants had and/or have a *policy and practice* of instructing their assistant

2  managers to 'adjust' their time cards to reflect that they took lunch breaks or did not work

3  overtime." <u>See</u> Peretz Decl. Ex. R ¶ 33 (emphasis added).  The inclusion of this allegation

4  would expand the scope of the litigation because it implicates the practices of each of

5  Defendants' fifty restaurants located in California, and well as those assistant managers paid on

6  an hourly basis.

7      In his reply, Plaintiff does not dispute that his new time-card allegation necessarily is

8  directed to a company-wide practice involving all of Defendants' California locations.  Rather,

9  he claims that this new allegation will require only "two or three questions" during the

10  depositions of the proposed class representatives.  Pl.'s Reply in Supp. of Mot. to Amend at 8.

11  Plaintiff provides no authority or reasoning to support this supposition.  In addition, given that

12  Defendants allegedly engaged in such conduct as a "policy and practice," it highly unlikely that

13  they would be able to fairly and adequately address this proposed new allegation simply by

14  asking a few additional questions at the proposed plaintiffs' depositions.  At bottom, the Court

15  finds that permitting Plaintiff to include this new allegation and joining new plaintiffs at this

16  late stage of the litigation would be unduly prejudicial to Defendants.

17  **IV.    <u>CONCLUSION</u>**

18      Plaintiff's lack of diligence is fatal to both of his motions.  In addition, permitting

19  Plaintiff to join new parties and a new claim at this late stage of the litigation would be unduly

20  prejudicial to Defendants.  Accordingly,

21      IT IS HEREBY ORDERED THAT:

22      1.    Plaintiff Caesar Osakan's Motion to Amend the First Amended Complaint

23  (Docket 54) is GRANTED IN PART and DENIED IN PART.  Plaintiff is granted leave to file

24  a Second Amended Complaint in order to limit the Class to California employees.  Plaintiff

25  shall file his Second Amended Complaint within five days of the date this Order is filed.

26      2.    Plaintiff Caesar Osakan's Motion to Continue Trial and All Related Deadlines

27  Identified in the Case Management Scheduling Order Issued on June 17, 2009 (Docket 55) is

28  DENIED.

3.      This Order terminates Docket 54 and 55.

IT IS SO ORDERED.

Dated: May 3, 2010

SAUNDRA BROWN ARMSTRONG
United States District Judge